IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Wakita Diamond,<br><br>       Plaintiff,<br><br>    v.<br><br>Unum Group and Colonial Life & Accident Insurance Company,<br><br>       Defendants. | C/A No.:  3:26-cv-1908-MGL-SVH<br><br><br>      COMPLAINT<br>    **Jury Trial Requested** |

## INTRODUCTION

Plaintiff Wakita Diamond, by and through her undersigned counsel, brings this action alleging Racial Discrimination and Retaliation in violation of 42 U.S.C. § 1981, including a racially hostile work environment, denial of promotion, and pay disparity, as well as for Breach of Contract and Breach of Contract Accompanied by Fraudulent Intent against Defendants Unum Group and Colonial Life & Accident Insurance Company. These claims are based on the following factual allegations.

## PARTIES

1. Plaintiff Wakita Diamond (hereinafter, "Plaintiff") is an African American woman and a citizen and resident of Richland County, South Carolina. Plaintiff was employed for approximately thirty (30) years within the Colonial Life/Unum enterprise, most recently as an Onboarding Experience Consultant.

2. Defendant Colonial Life & Accident Insurance Company (hereinafter, "Colonial Life") is a corporation authorized to do business in South Carolina, with operations in Richland

County, South Carolina. Plaintiff was employed by Colonial Life for the majority of her tenure.

3. Defendant Unum Group (hereinafter, "Unum") is a corporation authorized to do business in South Carolina and is the parent company of Colonial Life. Upon information and belief, Unum exercised control over certain terms, conditions, and policies affecting Plaintiff's employment, and Plaintiff was employed within the Unum enterprise during the final years of her tenure.

4. At all relevant times, Defendants operated as a single employer and/or joint employers of Plaintiff, sharing control over employment practices, policies, and decisions affecting Plaintiff.

5. At all relevant times, Defendants acted through their officers, directors, managers, supervisors, agents, and employees, who were acting within the course and scope of their employment and with actual and/or apparent authority on behalf of Defendants.

6. At all relevant times, Defendants owed Plaintiff statutory duties under 42 U.S.C. § 1981, as well as contractual and common-law duties under South Carolina law, including duties arising from Defendants' employment policies and agreements. These duties included, but were not limited to, the obligation to provide a workplace free from race discrimination, retaliation, and a hostile work environment; to ensure equal pay and promotional opportunities; and to refrain from breaching contractual obligations or engaging in fraudulent or reckless conduct in the supervision and management of their employees.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981, and supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendants because they conduct substantial business in South Carolina and in this District, and the events giving rise to these claims occurred in this District.

9. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391, because the causes of action arose therein, the acts and practices complained of occurred therein, and it is where the defendants are located, conduct business, and may be found.

## STATEMENT OF FACTS

10. Plaintiff is a fifty-six (56) year old African American female who was employed within the Colonial Life/Unum enterprise from July 13, 1995, until her constructive termination on or about April 27, 2025. Plaintiff was employed by Colonial Life for the majority of her tenure and, during the final years of her employment, worked within the broader Unum enterprise.

11. Throughout Plaintiff's tenure, she consistently received positive performance feedback, had no documented performance deficiencies or disciplinary actions, and received multiple "Spotlight Awards" recognizing her for exceeding job expectations and performing work outside her normal job duties.

12. Plaintiff began her most recent position as an Onboarding Experience Consultant ("OEC") on May 14, 2023, reporting within Defendants' Onboarding organization.

13. Upon commencement of this role, Plaintiff reported to Ashley Milsaps (Caucasian female), and was immediately assigned to Key Clients/National Client Group ("NCG") implementations.

14. Defendants' internal workflow system provides that NCG implementation responsibilities are assigned to the Onboarding Experience Manager ("OEM") role.

15. Notwithstanding this designation, Plaintiff, an African American OEC, was assigned exclusively to NCG implementations, including large and complex accounts customarily handled by OEM-level employees.

16. Plaintiff was not provided training specific to NCG processes, and the service-advisor resources assigned to assist her lacked NCG familiarity. Despite this, Plaintiff worked extended hours, including through lunch breaks, to meet Defendants' expectations and manage her caseload.

17. From mid-2023 through early 2025, Plaintiff successfully managed and implemented numerous large NCG accounts involving thousands of covered lives and substantial annual premiums, including Wilsonart, Penske Truck Leasing, Morningstar, and Amerihealth.

18. In April 2024, Defendants selected Plaintiff to provide Group Product training to OEM-level employees, despite Plaintiff holding a junior OEC role. Two other individuals selected for the training were OEMs.

19. Defendants' selection of Plaintiff to train OEM-level employees reflected that Plaintiff was performing at or above the functional level of more senior employees, while remaining classified and compensated in a lower-tier position.

20. From June 2024 through her constructive termination, Plaintiff repeatedly sought advancement to OEM and other promotional opportunities across both Colonial Life and

Unum for which she was qualified, including Digital Transformative Specialist II, Senior Digital Transformation Specialist, Marketing Programs Manager, and Cross Brand Solutions Specialist. Plaintiff completed job shadowing, participated in multi-round interviews, and consistently received strong, often glowing, feedback regarding her qualifications and readiness. During this period, the positions for which Plaintiff applied, across both entities, were filled by Caucasian employees.

21. In August 2024, upon Plaintiff's application for the Marketing Programs Manager role, her then-manager, Ashley Milsaps (Caucasian Female), informed a hiring manager that Plaintiff would be required to assume her existing caseload if selected for the promotion, which was an unusual and premature condition that had not been communicated to Plaintiff and that was not applied to other candidates.

22. In September 2024, Plaintiff's supervision changed and Jill Neff (Caucasian female) became Plaintiff's direct manager.

23. In or about October 2024, as a result of the increased workload and discriminatory treatment, Plaintiff experienced significant stress which had an adverse impact on her health.

24. Plaintiff reported her concerns to Defendants' then–Senior Vice President of Risk Management, Mary Wagnon, who directed Plaintiff to Defendants' Employee Relations department.

25. Thereafter, Plaintiff elevated concerns to Employee Relations representative Brittany Blais (Caucasian female), specifying that:

   a.  she was performing OEM-level work while classified and compensated as an OEC;

b. OEM positions were held exclusively by Caucasian employees, and such roles were filled without a transparent application process;

c. Defendants' management informed her that she would be required to apply for OEM positions, whereas her Caucasian counterparts were directly appointed into those roles, further demonstrating the lack of a transparent or documented pathway for advancement from OEC to OEM; and

d. Plaintiff reasonably feared retaliation for raising these concerns.

26. Defendants' Employee Relations initially disregarded Plaintiff's concerns and later responded in a dismissive manner. Defendants also stated that workflow documentation would be updated, but no changes were made.

27. Following Plaintiff's complaints, Defendants subjected her to increased scrutiny and materially adverse treatment, including intensified workload assignments and targeted criticism for adhering to Defendants' standard practices.

28. In November 2024, Plaintiff was informed she was not selected for the Marketing Programs Manager position or other applied-for roles, notwithstanding repeated assurances throughout 2024 from Defendants' interview panels and hiring leaders that Plaintiff possessed the qualifications, experience, and business acumen to perform such positions immediately. The Marketing Programs Manager role, as well as others across both Colonial Life and Unum, were filled by Caucasian employees.

29. Immediately thereafter, Plaintiff met with Defendants' hiring manager, Jessica Reece (Caucasian female), to obtain feedback regarding her non-selection. Ms. Reece informed Plaintiff that she was a strong, tenured candidate with a robust background and that

feedback from her interview panel was positive, but that Plaintiff's non-selection was based on subjective "fit" considerations.

30. Ms. Reece further identified generalized areas for improvement regarding internal terminology and business structure knowledge, while acknowledging Plaintiff's ability to quickly learn such information. Ms. Reece also noted the position posting had been re-opened due to a limited applicant pool.

31. The materially adverse treatment continued in late 2024 and early 2025, when Defendants consistently assigned Plaintiff high-volume, high-complexity accounts with minimal lead time during peak periods, while similarly situated employees outside Plaintiff's protected class were not subjected to comparable burdens and had assignments reassigned.

32. Defendants further subjected Plaintiff to adverse treatment during periods of illness, restricted her ability to use PTO despite compliance with policy, and continued to assign complex work for which she had not been properly trained.

33. OEM positions continued to be posted within Defendants' organizations without Plaintiff being selected or advanced, despite her qualifications and experience performing OEM-level work.

34. On February 13, 2025, Plaintiff received a Performance Review from Defendants' Caucasian managers that included a comment that Plaintiff "pushed back." After Plaintiff requested clarification regarding the basis for this characterization, Defendants removed the comment without explanation, evidencing reliance on vague and subjective criticism and further supporting an inference of pretext.

35. On February 20, 2025, Plaintiff's Caucasian manager informed her she would receive a 0% merit increase with a reduced bonus factor, on purported performance deficiencies. Her

manager admitted there was no contemporaneous documentation supporting these claims and instead relied on feedback Plaintiff had not previously received, underscoring the pretextual nature of Defendants' stated reasons.

36. Defendants' stated performance concerns were inconsistent with Plaintiff's documented performance and compensation. Contemporaneous records show Plaintiff's base salary of $73,500 with eligibility under the Unum Group 10% Bonus Plan, and an awarded 2025 bonus of $5,500, notwithstanding the 0% merit determination.

37. Plaintiff repeatedly requested specific dates and documentation supporting the sudden performance critique; by mid-April 2025, management still had not provided such information and later apologized to Plaintiff "for [her] having to go through this."

38. On February 21, 2025, Plaintiff reported the 0% merit increase and related concerns to the Senior Vice President of Risk Management, who stated that such decisions are often used to signal an intent to force an employee out and acknowledged concerns regarding Defendants' Employee Relations process.

39. Plaintiff observed and documented the following:

    a.  All existing OEMs within her department were Caucasian; and

    b.  African American employees, including Plaintiff, were disproportionately retained in OEC roles despite performing higher-level duties.

40. Plaintiff requested compensation commensurate with OEM-level work performed. Defendants refused.

41. In April 2025, Plaintiff accepted an internal lateral transfer to the position of National Partnerships and Broker Operations Advisor. Although the transfer was presented as a reclassification and opportunity to broaden Plaintiff's scope of responsibility, Plaintiff was

still not provided with the opportunity, title advancement, or consideration for promotion to an OEM-level position, nor was she placed on any defined pathway toward OEM status.

42. Defendants' conduct created intolerable working conditions, including discriminatory workload assignments, denial of promotion, disparate compensation, and retaliatory actions, such that a reasonable person in Plaintiff's position would have felt compelled to resign. As a result, Plaintiff was forced to resign and was constructively terminated on or about April 27, 2025.

43. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered economic loss, emotional distress, and other compensable damages.

44. Plaintiff brings this action to redress race-based disparate treatment and hostile working conditions, to remedy the denial of promotions and equal pay on the basis of race, and to enforce contractual commitments Defendants made and subsequently disregarded.

## FIRST CAUSE OF ACTION
### *RACIAL DISCRIMINATION UNDER 42 U.S.C. § 1981 (DISPARATE TREATMENT)*
### (Against Defendants Unum Group and Colonial Life & Accident Insurance Company)

45. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

46. Plaintiff is an African American employee who was qualified for her position and performed her duties at a high level, including successfully managing complex NCG implementations, training OEM-level employees, and receiving consistently positive feedback and recognition.

47. Defendants subjected Plaintiff to disparate treatment in the terms and conditions of her employment. Plaintiff was assigned to complex NCG implementations designated for OEM-level employees, without appropriate training, support, title, or compensation.

48. Similarly situated employees outside Plaintiff's protected class were treated more favorably, including that OEM roles were held by Caucasian employees, were filled without a transparent or competitive process, and were not made equally accessible to Plaintiff or other African American employees.

49. Plaintiff applied for multiple promotions, including Marketing Programs Manager and other roles, received strong and consistent positive feedback regarding her qualifications, yet was not selected. Upon information and belief, these positions were filled by Caucasian candidates.

50. Defendants further imposed barriers to Plaintiff's advancement not applied to others, including requiring that Plaintiff carry her existing caseload into a new role, a condition not disclosed to Plaintiff and not uniformly applied.

51. Defendants' reliance on subjective criteria such as "fit," shifting expectations, and undocumented performance concerns, despite Plaintiff's strong qualifications and performance history, further evidences pretext for discrimination.

52. Defendants' actions were motivated by Plaintiff's race and proximately caused damages, including but not limited to, lost promotions, lost pay, and emotional distress.

**SECOND CAUSE OF ACTION**
*RACIALLY HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. § 1981*
**(Against Defendants Unum Group and Colonial Life & Accident Insurance Company)**

53. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

54. Plaintiff was persistently subjected to unwelcome conduct, including being required to shoulder OEM-level work without appropriate training, support, or compensation, all while

disproportionally facing compressed timelines, heightened caseloads, and shifting directives during peak seasons.

55. Plaintiff was further subjected to heightened scrutiny, criticism for following Defendants' own procedures, denial of resources, and restrictions on leave, including during periods of illness.

56. Plaintiff also experienced interference with her advancement opportunities and repeated denials of promotion despite demonstrated qualifications.

57. After Plaintiff raised concerns about inequitable practices and racial disparities in assignments and promotions, management intensified scrutiny, advanced undocumented performance criticisms, interfered with internal mobility, and failed to provide timely, substantiated feedback.

58. The cumulative conduct was severe or pervasive, altered the conditions of employment, and was based on race.

59. As a direct and proximate result of Defendants' racially hostile work environment, Plaintiff has suffered significant and ongoing damages, including but not limited to emotional distress, health impacts, and economic harm.

### THIRD CAUSE OF ACTION
*FAILURE TO PROMOTE/ PROMOTION DENIAL UNDER 42 U.S.C. § 1981*
**(Against Defendants Unum Group and Colonial Life & Accident Insurance Company)**

60. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

61. Plaintiff applied and interviewed for multiple promotional opportunities, including Marketing Programs Manager, Cross Brand Solutions Specialist, Digital Transformative Specialist II, and Senior Digital Transformation Specialist.

62. Plaintiff was qualified for these positions, as evidenced by her experience performing higher-level work, training OEM-level employees, and receiving consistent positive feedback from interview panels and hiring managers.

63. Despite her qualifications, Plaintiff was not selected, and the positions were filled by Caucasian candidates.

64. Defendants relied on subjective criteria such as "fit" in making their hiring decisions and identified minor, non-dispositive areas for improvement, including familiarity with internal terminology and aspects of Defendants' business structure. At the same time, Defendants acknowledged that Plaintiff was a strong, qualified candidate with a robust background, demonstrated preparedness, and the ability to perform the role, and further recognized that any identified knowledge gaps were limited in scope and could be readily addressed within a short period of time. Despite these acknowledgments, Defendants declined to select Plaintiff, instead elevating subjective considerations over Plaintiff's demonstrated qualifications and experience.

65. Defendants' hiring process included irregularities, including re-posting positions due to a limited applicant pool and imposing unique conditions on Plaintiff's candidacy.

66. Moreover, within Plaintiff's department, existing OEMs (Caucasian) had been appointed without competitive posting or an established path, while no documented path existed for Plaintiff and other African American OECs who performed training and complex work.

67. Defendants' failure to promote Plaintiff was based on race and caused her to suffer lost compensation, career advancement, and benefits.

68. As a direct and proximate result of Defendants' refusal to promote, Plaintiff has suffered substantial damages, including but not limited to economic damages, professional

damages, health and emotional damages, consequential damages, and other general and compensatory damages.

## FOURTH CAUSE OF ACTION
### *PAY DISPARITY UNDER 42 U.S.C. § 1981*
**(Against Defendants Unum Group and Colonial Life & Accident Insurance Company)**

69. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

70. Plaintiff performed work substantially equivalent to that of OEM-level employees, including managing complex NCG implementations and training OEMs, while remaining classified and compensated as an OEC.

71. Plaintiff was paid a base salary and was denied compensation commensurate with her responsibilities despite requesting appropriate pay adjustments.

72. Defendants further reduced Plaintiff's compensation through a 0% merit increase and reduced bonus factor based on alleged performance deficiencies that were not documented, not previously communicated, and inconsistent with Plaintiff's performance history.

73. Defendants' unequal pay decisions were inconsistent, subjective, and based on Plaintiff's race, which resulted in Plaintiff being paid less than similarly situated employees outside her protected class.

74. As a result, Plaintiff suffered lost wages, benefits, and other economic damages.

## FIFTH CAUSE OF ACTION
### *RETALIATION UNDER 42 U.S.C. § 1981*
### (AGAINST DEFENDANTS UNUM GROUP AND COLONIAL LIFE & ACCIDENT INSURANCE COMPANY)

75. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

76. Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by opposing and complaining about race discrimination and racially disparate treatment within Defendants' workplace.

77. Specifically, in or about October 2024 through February 2025, Plaintiff complained to Defendants' management and Employee Relations personnel, including Senior Vice President of Risk Management Mary Wagnon and Employee Relations representative Brittany Blais, that:

   a.  Plaintiff was performing OEM-level duties while classified and compensated at the lower OEC level;

   b.  OEM positions were held exclusively by Caucasian employees;

   c.  Caucasian employees were appointed or advanced into OEM roles without a transparent application process, while Plaintiff was required to formally apply for advancement opportunities;

   d.  African American employees, including Plaintiff, were disproportionately retained in lower-level OEC roles despite performing higher-level responsibilities; and

   e.  Plaintiff feared retaliation for raising concerns regarding race discrimination and unequal treatment.

78. Plaintiff had a reasonable, good-faith belief that Defendants were engaging in unlawful race discrimination in violation of § 1981.

79. Defendants were aware of Plaintiff's protected activity.

80. Following Plaintiff's protected complaints, Defendants subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from engaging in protected activity.

81. Such retaliatory actions included, but were not limited to:

    a.  subjecting Plaintiff to heightened scrutiny and criticism;

    b.  assigning Plaintiff intensified workloads and disproportionately complex accounts with minimal lead time during peak periods;

    c.  criticizing Plaintiff for adhering to Defendants' standard practices;

    d.  restricting Plaintiff's ability to utilize PTO despite compliance with company policy;

    e.  continuing to deny Plaintiff promotional opportunities for which she was qualified;

    f.  issuing vague, subjective, and unsupported criticisms in Plaintiff's February 13, 2025 performance review, including the characterization that Plaintiff "pushed back," which Defendants later removed without explanation;

    g.  denying Plaintiff any merit increase and reducing her bonus factor on February 20, 2025, based upon purported performance deficiencies unsupported by contemporaneous documentation; and

    h.  creating and perpetuating working conditions so intolerable that Plaintiff was forced to resign and was constructively discharged on or about April 27, 2025.

82. Defendants' stated reasons for their actions were false, inconsistent, and pretextual.

83. Defendants admitted there was no contemporaneous documentation supporting the alleged performance concerns used to justify Plaintiff's 0% merit increase and reduced bonus determination.

84. Defendants further failed to provide Plaintiff with requested documentation or dates supporting the alleged deficiencies despite repeated requests, and management later apologized to Plaintiff "for [her] having to go through this."

85. The temporal proximity between Plaintiff's protected activity and Defendants' adverse actions, together with Defendants' inconsistent explanations and disparate treatment of Plaintiff, support a causal connection between Plaintiff's protected activity and the retaliatory conduct.

86. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered lost compensation, lost career advancement opportunities, emotional distress, humiliation, inconvenience, mental anguish, and other compensable damages.

87. Defendants acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**<u>SIXTH CAUSE OF ACTION</u>**
***BREACH OF CONTRACT UNDER SOUTH CAROLINA LAW***
**(Against Defendants Unum Group and Colonial Life & Accident Insurance Company)**

1. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

2. Defendants maintained written policies, procedures, and internal workflow documents governing roles and responsibilities, compensation, and advancement, including specifying that NCG implementations were assigned to the OEM role.

3. These policies and representations formed part of the terms and conditions of Plaintiff's employment.

4. Plaintiff complied with and relied upon Defendants' policies and performed assigned duties, repeatedly requesting appropriate role alignment, advancement opportunities, and fair compensation consistent with the policies and workflows, as well as her responsibilities.

5. Defendants materially breached their contractual undertakings by disregarding the role-responsibility structure in their internal workflow, by assigning Plaintiff OEM-level work while denying her OEM classification, imposing conditions on internal mobility not disclosed or consistently applied, and by failing to administer compensation and advancement in accordance with the established documents and representations.

6. As a proximate result, Plaintiff suffered damages including lost wages, lost benefits, and consequential losses.

**SEVENTH CAUSE OF ACTION**
*BREACH OF CONTRACT ACCOMPANIED BY FRADULENT INTENT UNDER SOUTH CAROLINA LAW*
**(Against Defendants Unum Group and Colonial Life & Accident Insurance Company)**

7. Plaintiff reiterates and realleges each and every allegation in the previous paragraphs as if set forth verbatim herein.

8. Defendants represented through their internal workflows and policies that NCG implementation work was assigned to the OEM role, while knowingly requiring Plaintiff to perform such work without corresponding title or compensation.

9. Defendant, through management and hiring personnel, repeatedly encouraged Plaintiff to apply for promotional opportunities, invited her to participate in multi-round interview processes, and represented that she was a strong and qualified candidate capable of performing the roles.

10. Despite these representations, Defendants selected other candidates for the positions and, upon information and belief, did not intend to promote Plaintiff, instead using the application and interview process to perpetuate the appearance of a fair and competitive selection process.

11. Defendants further made inconsistent and misleading representations regarding advancement criteria, including reliance on subjective "fit," identification of minor and easily remediable knowledge gaps, and shifting expectations, while acknowledging Plaintiff's ability to quickly learn and perform the roles.

12. Defendant, through Employee Relations and management, represented that internal onboarding workflows would be updated to address Plaintiff's concerns regarding the assignment of NCG implementations; however, no such updates were implemented. Defendants further imposed conditions on Plaintiff's advancement, including a requirement that Plaintiff carry her existing caseload into any promotional role, which was not disclosed as a standard requirement, was not uniformly applied to other employees, and was later reversed. These representations and conditions were material to Plaintiff's continued performance and advancement and were made in a manner that was inconsistent and misleading.

13. These representations were made with knowledge of their falsity or with reckless disregard for the truth and were intended to induce Plaintiff to continue performing higher-level work without appropriate compensation or advancement.

14. Defendants' breach was accompanied by fraudulent acts, including misrepresentations, omissions, and shifting explanations regarding job responsibilities, advancement opportunities, and compensation practices.

15. As a direct and proximate result, Plaintiff suffered damages including lost compensation, lost career advancement, and related harm.

16. Plaintiff seeks all available legal and equitable relief, including but not limited to back pay, front pay, lost benefits, compensatory damages for emotional distress, consequential

and special damages, punitive damages where available, pre- and post-judgment interest, costs, and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

17. WHEREFORE, Plaintiff respectfully prays that this Honorable Court declare that Defendants Unum Group and Colonial Life & Accident Insurance Company's actions complained of herein are illegal, issue its Judgment in Plaintiff's favor and against Defendants, and grant the following relief:

   a. Actual, compensatory, and consequential damages, in an amount to be determined at trial, including but not limited to lost wages, lost employment benefits, lost or reduced retirement-related benefits, damage to professional reputation, emotional distress, and other compensable damages resulting from Defendants' unlawful conduct;

   b. Damages for breach of contract and breach of contract accompanied by fraudulent intent, including all available consequential damages;

   c. Punitive damages in an amount to be determined by the Court or jury, based on Defendants' willful, reckless, and/or consciously indifferent conduct, including their failure to implement their own policies and protect Plaintiff's rights;

   d. Attorney's fees and costs of this action, as permitted by South Carolina law and the equitable powers of this Court;

   e. Prejudgment interest to the extent allowed by law;

   f. Post-judgment interest as allowed by law; and

   g. Such other and further relief as the Court deems just, proper, and equitable under the circumstances.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

Respectfully Submitted,

__s/Donald Gist_____

Donald Gist (13098)
**GIST LAW FIRM, P.A.**
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

                                      *Attorney for Plaintiff*

May 8, 2026